ARNOLD DERMAN, EXECUTOR OF THE ESTATE OF MAY GOLD
DREZNICK, DECEASED, PLAINTIFF–RESPONDENT, v. JAY
DREZNICK, DEFENDANT–APPELLANT, AND HUDSON CITY
SAVINGS BANK, HOWARD SAVINGS BANK AND SEAMAN'S
BANK FOR SAVINGS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 22, 1988—Decided August 9, 1988.

Before Judges MICHELS, SHEBELL and GAYNOR.

*Susan B. Persky,* a member of the Massachusetts Bar, argued the cause for appellant (*Persky and Persky,* attorneys; *Susan B. Persky,* of counsel and on the brief).

*Benjamin Weiner* argued the cause for respondent (*Weiner & Hendler,* P.A., attorneys; *Albert J. Peasco, Jr.,* on the brief).

The opinion of the court was delivered by

GAYNOR, J.A.D.

In this declaratory judgment action, the defendant, Jay Dreznick, appeals from the summary determination that funds on deposit in multiple-party, trustee-beneficiary accounts at the Howard Savings Bank and the Hudson City Savings Bank belong to the estate of May Gold Dreznick, deceased. It is contended that the motion judge erroneously construed and applied the controlling statutes.

On March 10, 1986 and May 9, 1986 the decedent opened accounts in the Howard Savings Bank and Hudson City Savings Bank, respectively, in which she named herself as trustee and the defendant, her son, Jay Dreznick as beneficiary. On or about May 12, 1986 decedent suffered a heart attack and was hospitalized. While in the hospital on May 18, 1986, Mrs. Dreznick wrote and signed a document declaring:

> I, May Gold Dreznick, being of sound mind and memory hereby revoke, two bank books that are in the following name
> 1. Howard Savings Bank in trust for Jay Dreznick 762–777 ·Manalapan Branch.
> 2. Hudson Savings Bank in Jersey City, in trust for Jay Dreznick (5 Corner Branch) 02–613560
> He is not to benefit in any way by these 2 books or accounts.

Mrs. Dreznick also requested that withdrawal slips for each of the accounts be obtained in the event they were required in order to effectuate her intent and on the following day completed such withdrawal slips. Subsequently, on May 21, 1986, Mrs. Dreznick signed typewritten letters to each of the banks advising that she had decided to change the subject accounts "to read *in my name alone*" as the accounts were no longer to be trust accounts and enclosing the bank books. [Emphasis in original.] The letters were mailed to the two banks by her son-in-law.

Mrs. Dreznick died on May 21, 1986. However, upon receipt of the letter on May 22, 1986, Howard Savings Bank complied with the instructions and effected the change. The Hudson City Bank allegedly did not receive the letter until June, when a copy was forwarded by plaintiff's counsel, and consequently there was no change in the trustee-beneficiary designation of the account. However, a handwritten note from Mrs. Dreznick requesting the deletion of the beneficiary's name and enclosing the bank book had been received by the Hudson City Bank. But, the employee of the bank did not recall when the note had been received and, because the note did not request that the account be closed, as required by bank procedures, the requested change was not made and the note with the bank book was returned to the sender. A preliminary order barred distribution of the accounts pending disposition of this action.

Concededly, the ownership of the funds on deposit was controlled by the operation of the following provisions of the multiple-party accounts legislation:

*N.J.S.A.* 17:16I–5c(2) which provides:

> On death of the sole trustee or the survivor of two or more trustees, any sums remaining on deposit belong to the person or persons named as beneficiaries, if surviving, or to the survivor of them if one or more die before the trustee, *unless there is clear evidence of a contrary intent;* if two or more beneficiaries survive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them. [Emphasis added.]

and,

### *N.J.S.A.* 17:16I–6 which states:

> The provisions of section 5 as to rights of survivorship are determined by the form of the account at the death of a party. This form may be altered by written notice or order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime. [Footnote omitted.]

In ruling that the account balances belonged to the plaintiff estate, the motion judge reasoned:

> Mrs. Dreznick set it up in the fashion that we've already spoken of and it is 17:16i–5(c). If the account is a trust account then the statute sets up what is substantive, not just procedural, and that is how the law will assume—presume, if you will, probably is a slight distinction between the two words, assume what happens on the death and subdivision (2) says: "(c)(2) On the death of the sole trustee or the survivor of two or more trustees,"—that's what we have here, Mrs. Dreznick died—"any sums remaining on deposit belong to the person or persons named as beneficiaries," Jay Dreznick, "if surviving," and he is, "unless there is clear evidence of a contrary intent."
>
> That's what the statute says. It belongs to the beneficiary unless there is a clear evidence of contrary intent. Now, when you say it that simply and then you say look what Mrs. Dreznick did, there cannot be anything less than a clear evidence of a contrary intent. She was really terribly specific about what her intent was before she died. And the evidence of a contrary intent has nothing to do with what she told the bank. The evidence of contrary intent is what was going on in her mind before her death. Knowing and well knowing that she has set up trust accounts. And (c) significantly differs from (a) because (a) uses the same kind of language unless there is a clear and convincing evidence of a different intention with regard to joint accounts but adds at the time the account is created so the statute contemplates that the one who set up the trust being the trustee of the trust account could change the intent and it doesn't have to be a change at the time the account is created since that limited language is not there it means the change, any type of intent, so long as there is clear evidence of it.

On this appeal, defendant, Jay Dreznick, contends that the trial court failed to correctly interpret section 6 as representing

the "decision of the Legislature concerning the mandatory manner in which survivorship rights created under *N.J.S.A.* 17:16I–5 can be altered or 'blocked' ", and thus "under *N.J.S.A.* 17:16I–6 and under the undisputed facts of this case, the motion judge should have found that the beneficial ownership of the contested accounts" belonged to defendant.[1] We disagree.

Clearly, under section 5 of the statute the survivorship interest in a trustee bank account vests in the named beneficiary upon the death of the trustee "unless there is clear evidence of a contrary intent." While section 6 states that the "rights of survivorship are determined by the form of the account at the death of a party," which form may be altered by written notice given by a party and received by the bank during the party's lifetime, we are unpersuaded that this statutory language was intended to control where there was clear evidence that the depositor intended a contrary disposition of the account. *See In re Estate of Lienemann,* 222 *Neb.* 169, 382 *N.W.*2d 595 (Sup.Ct.1986); *In re Estate of Dembiec,* 321 *Pa.Super.* 515, 468 *A.*2d 1107 (Pa.Super.1983). Acceptance of defendant's interpretation of the inter-relationship of these two sections of the statute would render meaningless the expressed condition in section 5. As we observed in *Cobb v. Waddington,* 154 *N.J.Super.* 11 (App.Div.1977), *certif. den.* 76 *N.J.* 235 (1978), "[f]ull effect should be given to every word of a statute. [citation omitted]. Every word, sentence and clause shall, if possible, be given full force and effect." *Id.* at 17 (citation omitted). *See also Monmouth Lumber Co. v. Ocean Township,* 9 *N.J.* 64, 77 (1952); *Hoffman v. Hock,* 8 *N.J.* 397, 406–407 (1952).

---

[1]While the trial judge's oral opinion did not properly reflect the direction in *N.J.S.A.* 17:16I–3 that sections 4 to 6 of the statute were relevant to controversies as between parties and beneficiaries of multiple-party accounts and that sections 8 to 13 governed the liability of financial institutions which make payments thereto, such misstatement did not affect the correctness of the court's decision.

The form of the multiple-party account may be said to create a rebuttable presumption as to the survivorship rights of a party to a joint account or the beneficiary named in a trust account. As to the former, the presumed right of the surviving payee of a joint account may be rebutted by a showing of "a different intention at the time the account is created," *N.J.S.A.* 17:16I–5a, while in the case of the latter, the presumed survivorship right of the beneficiary upon the death of the sole trustee may be rebutted by "clear evidence of a contrary intent." *N.J.S.A.* 17:16I–5c(2). That the condition in section 5c(2) was not to be operative at the time of the creation of the account is evident from the absence of such an express provision as contained in section 5a. Moreover, as noted in the following official comment to § 6–102 of the Uniform Probate Code, from which our statute was derived, these conditions were intended to preserve to depositors the opportunity to show various intentions attending the establishment of multiple-party accounts or affecting them thereafter:

> This section organizes the sections which follow into those dealing with the relationship between parties to multiple-party accounts, on the one hand, and those relating to the financial institution-depositor (or party) relationship, on the other. By keeping these relationships separate, it is possible to achieve the degree of definiteness that financial institutions must have in order to be induced to offer multiple-party accounts for use by their customers, while preserving the opportunity for individuals involved in multiple-party accounts to show various intentions that may have attended the original deposit, or any unusual transactions affecting the account thereafter. The separation thus permits individuals using accounts of the type dealt with by these sections to avoid unconsidered and unwanted definiteness in regard to their relationship with each other. In a sense, the approach is to implement a layman's wish to "trust" a co-depositor by leaving questions that may arise between them essentially unaffected by the form of the account.

Here, as noted by the motion judge, when you "look [at] what Mrs. Dreznick did, there cannot be anything less than a clear evidence of a contrary intent" that defendant, Jay Dreznick, was not to have any survivorship rights in the subject accounts. This finding was amply supported by the proofs and is not disputed. As there existed no genuine issue of material fact with respect to the decedent's intent that the beneficiary

named on the accounts have no survivorship rights, summary judgment was appropriately granted in favor of plaintiff. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75 (1954).

AFFIRMED.